IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:15-CV-84-BO

| | | |
|---|---|---|
| TED D. SPRING, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| THE BOARD OF TRUSTEES OF CAPE FEAR | ) | |
| COMMUNITY COLLEGE, *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

This matter is before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and the matter is ripe for ruling. Also pending and ripe for adjudication is plaintiff's motion for sanctions. For the reasons discussed below, both motions are denied.

BACKGROUND

Plaintiff was selected by the Board of Trustees of Cape Fear Community College (CFCC or the college), located in Wilmington, North Carolina, to serve as its President, and his employment agreement with the CFCC Board was executed on August 28, 2012. [DE 112-5]. Plaintiff's initial term of employment was for three years, subject to either early termination or renewal pursuant to the terms of the agreement. *Id.* The agreement further provided that plaintiff's employment could be terminated for cause, which would require the board of trustees to provide plaintiff with written notice explaining the basis for termination and plaintiff's right to a hearing. *Id.*

Plaintiff alleges in his complaint that his tenure as President of CFCC was filled with change and transition, including replacement of senior staff and construction of new buildings.

Beginning in the fall of 2014, the local media began to report on actions taken by plaintiff in his role as CFCC President. The reports included questions regarding travel reimbursements by the college to plaintiff for his wife's travel and other expenses as well as plaintiff's mileage reimbursements for a car provided to plaintiff at no cost. *See, e.g.,* [DE 112-14]. In November 2014, plaintiff met with the Jason Harris, Chairman of the Board of Trustees, regarding the media coverage and plaintiff's car and travel expenses. [DE 118-1], Spring Dep. at 118.

On January 6, 2015, the board of trustees held an executive committee meeting in closed session at which plaintiff appeared. [DE 112-22]. Plaintiff's contract, travel, vehicle, and reimbursements were discussed. *Id.* Also discussed were plaintiff's memberships in outside agencies or clubs for which the college paid and plaintiff's decision to hire Bill Loope, a personal friend, as a consultant to prepare a report for the college. *Id.* The following day, plaintiff emailed Harris noting that the car plaintiff had used had been returned and that several of his professional memberships were either cancelled or would be billed to plaintiff personally. [DE 112-28].

At a regularly scheduled meeting on January 22, 2015, the CFCC Board voted to go into executive session and plaintiff was asked to leave. [DE 112-47]. During the closed session, the college's director of human resources and vice president were called in to meet with the board. *Id.* Plaintiff was next called into the closed session and contends that he was told that his contract would not be renewed in November 2015, and that he could either resign immediately or the board would return to open session and fire him. [DE 118-1], Spring Dep. at 268-270. Plaintiff states that he asked whether he would have until the next morning to weigh his options and that the board refused his request, and that when he inquired as to the basis of his termination, he was told that he had not done what the board had asked him to do. Plaintiff

2

contends that he had no choice at that point but to resign that night. *Id.* Following plaintiff's resignation, there was some discussion with the board regarding a severance package. *See, e.g.* [DE 118-4], Turner Dep. at 91. No severance was ultimately paid, and the parties disagree as to whether an agreement was reached. *See, e.g.* [DE 112-24], Ibrahim Aff. at ¶ 19.

In his second amended complaint, plaintiff raises four substantive claims for relief: breach of contract, violation of due process/constitutionally guaranteed liberty interest under Article I § 19 of the North Carolina Constitution, violation of due process/liberty interest under 42 U.S.C. § 1983 against the individual board members in their official capacities, and an alternative claim for breach of severance agreement. Plaintiff further seeks an award of attorneys' fees under 42 U.S.C. § 1988 and N.C. Gen. Stat. § 6-19.1.

## ANALYSIS

I.   Motion for Summary Judgment

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for

3

the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

The Court begins its analysis of defendants' motion with plaintiff's 42 U.S.C. § 1983 claim, through which he alleges that he was denied due process in violation of the Fourteenth Amendment. Specifically, plaintiff alleges that his property interest in his continued employment by the college requires that he be afforded due process of law prior to termination. Plaintiff further alleges that as a public employee he had a liberty interest to pursue the occupation of his choice and was entitled to due process of law prior to his employer taking any action which might stigmatize him or impair his right to pursue his occupation. Plaintiff seeks reinstatement to his former position and the right to an impartial hearing to restore his name.

College professors and staff whose employment has been terminated during the terms of their contracts have been found to "have interests in continued employment that are safeguarded by due process." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In order to have a property interest in the benefit of continued employment, a person must have a legitimate claim of entitlement to continued employment, not merely a unilateral expectation of it. *Id.* An employee's liberty interest is implicated where a state makes a "charge against him that might seriously damage his standing and associations in his community." *Id.* at 573. If such a charge is made, due process requires an opportunity to refute such charge. *Id.*

Here, plaintiff's employment contract, the original term of which had not expired and which provided for termination only for cause, plainly provided plaintiff with a property interest in his continued employment. *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988). However, if plaintiff "resigned of his own free will even though prompted to do

4

so by events set in motion by his employer, he relinquished his property interest voluntarily and thus cannot establish that the state 'deprived' him of it within the meaning of the due process clause." *Id.* at 173. The question then before the Court is whether there is a genuine issue of material fact in the record as to whether plaintiff's resignation was "so involuntary that it amounted to a constructive discharge . . . triggering the protections of the due process clause." *Id.*

There is ample evidence in the record of plaintiff's statement of resignation on January 22, 2015. [DE 112-2] (letter signed by plaintiff to the board of trustees stating "Please accept my letter of resignation effective January 22, 2015."); [DE 112-1], Spring Dep. at 276-77; [DE 112-3] (email from plaintiff to Debbie Elliot dated January 22, 2015, stating "I resigned tonight."). A resignation from employment may be found to be so involuntary as to trigger due process protections where it was "obtained by the employer's misrepresentation or deception" or it was "forced by the employer's duress or coercion." *Id.* at 174. To determine whether there has been coercion or duress in this context, the Court considers the totality of the circumstances surrounding the resignation, including such factors as "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." *Stone*, 855 F.2d at 174. An employee's resignation may be found to be involuntary due to an employer's misrepresentation "if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation." *Id*.

Having reviewed the record and considered the evidence in the light most favorable to plaintiff, a genuine issue of material fact exists as to whether plaintiff's resignation was

5

voluntary. Plaintiff contends that defendant Harris told plaintiff during the closed session of the board meeting on January 22, 2015, that plaintiff could resign immediately or the board would go back into open session and fire him. [DE 103 ¶ 69]; [DE 112-1], Spring Dep. at 294. The record reflects that, no matter the precise language used by defendant Harris, the implication was clear that plaintiff could either resign or the board would seek to terminate his employment. *See, e.g.,* [DE 118-2], Williamson Dep. at 75 ("I understood that yes, [Dr. Spring] would be terminated . . .if he did not resign that evening."]. This so-called "Hobson's choice," to either resign or be fired, does not in itself demonstrate coercion or duress by defendants. However, two of the remaining *Stone* factors to be considered – whether plaintiff was afforded time to consider his decision or the opportunity to discuss the circumstances with counsel – are not present here. Thus, when considering the totality of the circumstance surrounding plaintiff's resignation, the Court cannot on this record conclude that plaintiff's resignation was voluntary. Because there is a genuine issue of material fact as to this issue, the Court must deny defendants' motion for summary judgment on plaintiff's property interest claim. The Court will allow plaintiff's breach of employment contract claim to proceed to trial as well in light of the question of fact surrounding the voluntariness of his resignation.

Plaintiff has further established that a genuine issue of material fact exists as to his liberty interest claim. "The type of communication that gives rise to a protected liberty interest implies the existence of serious character defects such as dishonesty or immorality." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006) (internal quotation and citation omitted). "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made

6

public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007).

Defendants contend that statements made by them to the media in the wake of plaintiff's resignation were true. Plaintiff relies on his own contradictory statement to establish that a statement by a board member that "Spring asked one of his employees to fabricate a report in exchange for a promotion," [DE 118-32]; [DE 11-33 at 116], which was reported by the media, was not true. Plaintiff also points to a statement about him made by defendant White to the media, in which White stated that he had "lost confidence in the accuracy of information [he] was given about student enrollment," [DE 118-31], and which was later contradicted by White's email response to a reporter that he "did not ever believe [the enrollment data] was fabricated," [DE 118-29 at 6], as evidence that false and stigmatizing statements were made by board members to the public. Although self-serving conclusory statements will not alone create a genuine issue of material fact, the he said/she said nature of the evidence regarding plaintiff's actions, statements made by board members, and the news media are sufficient here to establish that a genuine issue of material fact exists as to the truth of statements made publically by board members following plaintiff's resignation. *See Massie v. Bd. of Trustees, Haywood Cmty. Coll.*, 357 F. Supp. 2d 878, 883 (W.D.N.C. 2005). This claim thus proceeds to trial.[1] In light of the foregoing, the Court allows plaintiff's alternative claim for breach of severance agreement to proceed as well.

---

[1] Because the "due process protection provided by the North Carolina Constitution is at least as broad as that of the United States Constitution," *Toomer v. Garrett*, 155 N.C. App. 462, 472 (2002), plaintiff's due process claim under the North Carolina Constitution may also proceed.

II.     Motion for Sanctions

Plaintiff moves for sanctions regarding the affidavits of J. Todd Parker, Bobby Bird, and Louis Burney filed by defendants. Plaintiff argues that defendants failed to timely and promptly supplement prior disclosures and provide these affidavits to plaintiff in violation of Fed. R. Civ. P. 26(a) and the Court's scheduling order.

Rule 37(c) of the Federal Rules of Civil Procedure provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In determining whether the failure to provide information or identify a witness was harmless or substantially justified, the Court considers "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Having reviewed the arguments of the parties, the Court finds that any failures by defendants regarding these affidavits were harmless. Louis Burney is a named defendant, was at all times relevant a member of the board of trustees of CFCC, and was named as a potential witness in defendants' initial disclosures served in September 2015. J. Todd Parker was identified by defendants as a potential witness well-prior to the end of the discovery period. Bobby Bird's affidavit was provided in response to an interrogatory served by plaintiff in May 2016. The Court finds no surprise to plaintiff of the existence of these individuals or that they may have relevant information that would require cure. Further, the Court finds no reason to hold that the allowance of such evidence would disrupt the trial. The Court in its discretion

declines to impose sanctions on defendants regarding the aforementioned affidavits or testimony.[2]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [DE 109] is DENIED and plaintiff's motion for sanctions [DE 114] is also DENIED. The clerk is DIRECTED to refer this matter to the assigned United States Magistrate Judge for pretrial conference.

SO ORDERED, this 27 day of January, 2017.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[2] In their motion for summary judgment, defendants raise issues with evidence proffered by plaintiff. Because they have failed to file a separate motion requesting specific relief, the Court declines to strike or bar plaintiff's evidence.

9